# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

MICHAEL S. M.,[1]                                      6:20-cv-00837-BR

       Plaintiff,                          OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

**KEVIN S. KERR**
Kerr, Robichaux & Carroll
626 S.E. Alder St.
Portland, OR  97293
(503) 255-9092

       Attorneys for Plaintiff

**SCOTT ERIK ASPHAUG**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3710

Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Michael S. M. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits.

## ADMINISTRATIVE HISTORY

On May 18, 2017, Plaintiff protectively filed his

application for DIB benefits.  Tr. 16, 147.[2]  Plaintiff alleges a
disability onset date of November 30, 2015.  Tr. 16, 147.
Plaintiff's application was denied initially and on
reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on February 21, 2019.  Tr. 16, 29-51.  Plaintiff and a
vocational expert (VE) testified at the hearing.  Plaintiff was
represented by an attorney at the hearing.

On March 5, 2019, the ALJ issued an opinion in which she
found Plaintiff was not disabled from November 30, 2015, his
alleged disability onset date, through December 31, 2017, his
date last insured, and, therefore, was not entitled to benefits.
Tr. 16-24.  Plaintiff requested review by the Appeals Council.
On March 19, 2020, the Appeals Council denied Plaintiff's
request to review the ALJ's decision, and the ALJ's decision
became the final decision of the Commissioner.  Tr. 1-3.  *See*
*Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On May 26, 2020, Plaintiff filed a Complaint in this Court
seeking review of the Commissioner's decision.

---

[2] Citations to the official Transcript of Record (#15)
filed by the Commissioner on January 11, 2021, are referred to
as "Tr."

## BACKGROUND

Plaintiff was born on November 16, 1965. Tr. 22, 147. Plaintiff was 52 years old on December 31, 2017, his date last insured. Tr. 22. Plaintiff has at least a high-school education. Tr. 22, 33. Plaintiff has past relevant work experience as an auto-customizer, tow-truck driver, construction superintendent, and contractor. Tr. 22.

Plaintiff alleges disability during the relevant period due to severe back pain, neck fusions, knee issues as a result of multiple surgeries, arthritis, left-hip injury, injuries to both shoulders, severe migraines, bone spurs on his foot, right hand issues, and severe pain. Tr. 52-53.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 18-22.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must

demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's

testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I.   **The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete

incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity from November 30, 2015, his alleged onset date, through December 31, 2017, his date last insured. Tr. 18.

At Step Two the ALJ found Plaintiff had the severe impairments of degenerative-disc disease of the cervical spine following a fusion in 2012, degenerative-disc disease of the lumbar spine, right-knee osteoarthritis, left-knee replacement, and headaches.  Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 19.  The ALJ found Plaintiff had the RFC to perform light work with the following limitations:  could never kneel or crawl; could only occasionally climb ladders, ropes, and scaffolds; and could only occasionally stoop and crouch. The ALJ also found Plaintiff could climb ramps and stairs and could balance.  Tr. 19.

At Step Four the ALJ concluded Plaintiff was unable to perform his past relevant work.  Tr. 22.

At Step Five the ALJ found Plaintiff could perform other jobs that exist in the national economy such as wire-worker, small-products assembler, and electrical-accessories assembler. Tr. 23. Accordingly, the ALJ found Plaintiff was not disabled during the relevant period. Tr. 24.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed to provide legally sufficient reasons for discounting the opinion of Michael Henderson, D.O., an examining physician, regarding Plaintiff's neck limitation and (2) failed to provide legally sufficient reasons for discounting Plaintiff's subjective symptom testimony.

**I.   The ALJ erred when she failed to provide legally sufficient reasons for discounting Dr. Henderson's opinion.**

Plaintiff contends the ALJ erred when she failed to provide legally sufficient reasons supported by substantial evidence in the record for discounting Dr. Henderson's opinion regarding Plaintiff's neck limitations.

### A.   Standards

"Because Plaintiff filed [his] application[] after March 27, 2017, new regulations apply to the ALJ's evaluation of

medical opinion evidence." *Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). The new regulations provide the Commissioner "'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s] or prior administrative finding(s)[.]'" *Linda F.*, 2020 WL 654628, at *2 (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the Social Security Administration "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P 2017 WL 3928298, at *1

(S.S.A. Mar. 27, 2017).  In other words, the Commissioner must

consider all medical opinions and "evaluate their

persuasiveness" based on "supportability" and "consistency"

using the factors specified in the regulations.  20 C.F.R.

§ 404.1520c(c).  Those factors include "supportability,"

"consistency," "relationship with the claimant,"

"specialization," and "other factors."  *Id.*  The factors of

"supportability" and "consistency" are considered to be "the

most important factors" in the evaluation process.  *Id.*  *See*

*also Linda F.*, 2020 WL 6544628, at *2.

In addition, the regulations change the way the

Commissioner should articulate his consideration of medical

opinions.

> First, we will articulate our consideration of
> medical opinions from all medical sources
> regardless of whether the medical source is an
> AMS [Acceptable Medical Source].  Second, we will
> always discuss the factors of supportability and
> consistency because those are the most important
> factors.  Generally, we are not required to
> articulate how we considered the other factors
> set forth in our rules.  However, when we find
> that two or more medical opinions . . . about the
> same issue are equally well-supported and
> consistent with the record but are not exactly
> the same, we will articulate how we considered
> the other most persuasive factors.  Third, we
> added guidance about when articulating our
> consideration of the other factors is required or

> discretionary.  Fourth, we will discuss how
> persuasive we find a medical opinion instead of
> giving a specific weight to it.  Finally, we
> will discuss how we consider all of a medical
> source's medical opinions together instead of
> individually.

*Revisions to Rules*, 82 Fed. Reg. 5844.

Although the regulations eliminate the "physician
hierarchy," deference to specific medical opinions, and the
assignment of "weight" to a medical opinion, the ALJ must still
"articulate how [he/she] considered the medical opinions" and
"how persuasive [he/she] find[s] all of the medical opinions."
20 C.F.R. § 404.1520c(a) and (b)(1).  The ALJ is required to
"explain how [he/she] considered the supportability and
consistency factors" for a medical opinion.  20 C.F.R.
§ 404.1520c(b)(2).  "At the least, this appears to necessitate
that an ALJ specifically account for the legitimate factors of
supportability and consistency in addressing the persuasiveness
of a medical opinion."  *Linda F.*, 2020 WL 6544628, at *2.
Finally, the Court must also "continue to consider whether the
ALJ's analysis has the support of substantial evidence."  *Linda
F.*, 2020 WL 6544628, at *2 (citing 82 Fed. Reg. at 5852).

**B.    Analysis**

On September 5, 2017, Dr. Henderson performed a

consultative examination of Plaintiff.  Tr. 235-40.

Dr. Henderson reviewed medical records from Valley Family

Medical Center as part of his examination.  Dr. Henderson also

interviewed Plaintiff who reported he had pain in his neck,

shoulders, and back that limited his lifting to 20 pounds and

prevented him from looking down at a table to read blueprints.

Plaintiff also stated he experienced headaches, which he treated

with rest and over-the-counter medication.  Plaintiff described

hip and knee pain that limited his ability to climb stairs and

ladders and prevented him from walking on uneven surfaces

although he was able to walk approximately half a mile.

Tr. 235.  Dr. Henderson noted Plaintiff did not need or use

assistive devices to walk, but he noted Plaintiff had "some

inconsistencies with range of motion." Tr. 236.  Dr. Henderson

assessed Plaintiff's neck pain as "the most impairing condition"

according to his history.  Tr. 237.  He also noted Plaintiff had

> decreased range of motion on exam but no radicular
> symptoms or signs on exam.  [Plaintiff's] primary
> limitation is limited ability to look down.  This is
> roughly consistent with the decreased range of motion
> on exam and so would concur that his ability to look
> down for more than 15 minutes at a time is restricted.

Tr. 237.  Dr. Henderson stated there was some discrepancy with

Plaintiff's range of motion for his low back.  He also stated

Plaintiff was limited to lifting 20 pounds and, based on Plaintiff's subjective information only, had difficulty bending and using stairs. Tr. 237. Dr. Henderson opined Plaintiff had moderate osteoarthritis in both hands, but he did not recommend any manipulative limitations because Plaintiff "seems to have intact gross and fine motor activity." Tr. 237. Dr. Henderson also noted Plaintiff "perhaps" had arthritis in his right knee and would be a "good candidate" for replacement, but there was not any imaging available. Tr. 237.

The ALJ concluded Dr. Henderson's restriction for Plaintiff "looking down at a table" was "not persuasive" based on (1) the "extremely limited" treatment records, (2) Dr. Henderson's observation of inconsistencies in range of motion, (3) Plaintiff's reports of engaging in work activity, and (4) Plaintiff's report of being able to lift and to carry "in the light range." Tr. 21. The ALJ, however, concluded Dr. Henderson's examination findings and conclusions and Plaintiff's self-reported abilities were consistent with an RFC for light work. Tr. 21.

Nevertheless, Plaintiff contends the ALJ improperly discounted Dr. Henderson's opinion based on the fact that there

were only limited treatment records.  Plaintiff testified at the hearing that he did not have insurance during the relevant period due to his financial status, and he was unable to obtain coverage through the Affordable Care Act (ACA).  Tr. 38.

The Commissioner, however, contends the ALJ properly discounted Dr. Henderson's opinion because Plaintiff's limited treatment records resulted in Dr. Henderson not having relevant records to review, and, therefore, his findings were based solely on a "questionable range of motion test result."  Tr. 21.

Although Dr. Henderson noted there were "inconsistencies with range of motion," that was part of his "general/clinical observations."  He specifically pointed out, however, that Plaintiff had decreased range of motion on examination of Plaintiff's neck.  Tr. 237.  Dr. Henderson also attached a Range of Joint Motion Evaluation Chart to his report that shows Plaintiff's neck extension, flexion, lateral bending, and neck rotation are less than normal ranges.  Tr. 239. Dr. Henderson's opinion regarding Plaintiff's neck limitation, therefore, is supported by objective evidence in the record.

The ALJ also discounted Dr. Henderson's opinion based on Plaintiff's reports of work activity after his alleged

disability onset date of November 30, 2015, and his report that he was able to lift and to carry 20 pounds, which is in the "light range." Tr. 21. The ALJ noted Plaintiff reported in July 2016 that he "works building cars and lifts heavy objects all day." Tr. 21, 221. This evidence, however, is not inconsistent with Dr. Henderson's opinion in 2017 regarding Plaintiff's neck limitations.

Although Plaintiff reported performing heavy work in July 2016, the record does not reflect he continued to perform this work. Plaintiff also testified at the hearing that he had been doing "handyman jobs," "maybe 10-12 hours a week" for cash "to make ends meet," but he had not regularly performed that work for the "past year or two." Tr. 34. The timing coincides with February 2017, which is before Plaintiff's date last insured of December 31, 2017. In addition, even though the ALJ found Plaintiff performed work activity after his alleged disability onset date, the ALJ specifically found the work did not constitute substantial gainful activity. Tr. 18.

The Court concludes on this record that the ALJ erred when she discounted Dr. Henderson's opinion regarding Plaintiff's neck limitations because the ALJ failed to provide

legally sufficient reasons supported by substantial evidence in
the record for doing so.

## II. The ALJ erred when she failed to provide legally sufficient reasons for discounting Plaintiff's subjective symptom testimony.

Plaintiff contends the ALJ erred when she failed to provide
legally sufficient reasons supported by substantial evidence in
the record for rejecting Plaintiff's subjective symptom
testimony.

### A. Standard

The ALJ engages in a two-step analysis to determine
whether a claimant's testimony regarding subjective pain or
symptoms is credible. "First, the ALJ must determine whether
the claimant has presented objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'" *Garrison v.
Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter
v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). The
claimant need not show her "impairment could reasonably be
expected to cause the severity of the symptom she has alleged;
she need only show that it could reasonably have caused some
degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting

*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."
*Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this
analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear
and convincing reasons for doing so."  *Garrison*, 759 F.3d at
1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)(same).  General assertions that the
claimant's testimony is not credible are insufficient.  *Parra v.
Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must
identify "what testimony is not credible and what evidence
undermines the claimant's complaints."  *Id*. (quoting *Lester v.
Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.  Analysis**

In his application for disability benefits Plaintiff
stated he had severe back pain, a neck fusion, knee issues due
to multiple surgeries, arthritis, right hand issues, and severe
pain.  Tr. 53.  In an Adult Function Report dated July 22, 2017,

Plaintiff indicated he was unable to hike more than half a mile, could only do light lifting, had limited reach, and could not kneel. Tr. 180. He also noted it hurts to squat, to bend, and to stand. Tr. 184. He could only walk a quarter mile before he needed to rest for five minutes. Tr. 184. Plaintiff testified at the hearing on February 21, 2019, that he was unable to work because it was difficult for him to change positions due to joint pain and his legs going numb, and he experienced pain in his thighs, back, and feet when he stood for long periods. Tr. 35-36. He also testified he was unable to lift as much as a gallon of milk, he could not work at shoulder height or overhead due to shooting pain in his neck and limited motion, and had "serious issues just doing day-to-day" activities such as picking up a laundry basket due to his limitations. Tr. 35-36, 41.

The ALJ discounted Plaintiff's symptom testimony on the grounds that it is "inconsistent with a lack of significant objective findings and ongoing treatment records." Tr. 20. As noted, however, a claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014. In addition, the ALJ

must consider whether an individual may not be able to afford treatment or have access to medical services. *See* SSR 16-3p, 2017 WL 5180304, at *10.

Here Plaintiff testified he continued his health insurance until he could no longer afford it, and then he applied for but did not receive coverage under the ACA. Tr. 38. Although Plaintiff reported performing heavy work in July 2016, the record does not reflect he continued to perform this work. Plaintiff also testified at the hearing that he had been doing "handyman jobs," "maybe 10-12 hours a week" for cash "to make ends meet," but he had not done this work regularly for the "past year or two." Tr. 34.

The limited available medical records also support Plaintiff's testimony. For example, x-rays of Plaintiff's left hand on October 9, 2014, showed osteoarthritis of the thumb. Tr. 3035. On August 21, 2017, x-rays of Plaintiff's lumbar spine showed moderate to severe multilevel disc disease, and x-rays of the bilateral knees showed moderate right knee osteoarthritis. Tr. 233-34. In addition, Dr. Henderson opined Plaintiff might need a right knee replacement and diagnosed Plaintiff with moderate osteoarthritis in both hands. Tr. 236-

37.  Elizabeth Winters, N.P., a treating provider, also noted on September 26, 2018, that Plaintiff might need a right knee replacement.  Tr. 326.  On examination N.P. Winters also noted Plaintiff had a decreased range of motion in his right knee and lumbar back.  Tr. 325.

The Court concludes on this record that the ALJ erred when she discounted Plaintiff's symptom testimony regarding his limitations because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## REMAND

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings.  *Carmickle*, 533 F.3d at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172,

1178 (9th Cir. 2000). The court should grant an immediate award

of benefits when

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are no
> outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required
> to find the claimant disabled were such evidence
> credited.

*Id.* The second and third prongs of the test often merge into a

single question: Whether the ALJ would have to award benefits

if the case were remanded for further proceedings. *Id.* at 1178

n.2.

As noted, the Court has concluded the ALJ erred when she

failed to provide legally sufficient reasons supported by

substantial evidence in the record for discounting Plaintiff's

testimony and for discounting the medical opinion of

Dr. Henderson regarding Plaintiff's limitations. After

considering the record as a whole, the Court concludes the ALJ

would be required to find Plaintiff disabled and to award

benefits to Plaintiff if Dr. Henderson's opinion regarding

Plaintiff's limitations and Plaintiff's testimony were credited.

Accordingly, the Court remands this matter for the

immediate calculation and payment of benefits.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 25th day of June, 2021.


                              __s/ Anna J. Brown_____
                              ANNA J. BROWN
                              United States Senior District Judge